## BISHOP vs. THE STATE.

[INDICTMENT FOR FORGERY.]

1. *General rules of practice.*—The "rules of practice in circuit and county courts," adopted by the supreme court at its January term, 1838, and republished in the appendix to the Code, (pp. 714, *et seq.*,) are repealed by the Code, so far as its provisions are inconsistent with them.

2. *Change of venue.*—On change of venue in a criminal case, the prisoner must be tried on a certified transcript of the original indictment and proceedings thereon, as required by section 3613 of the Code, and not on the original papers themselves, as required by the former rule of practice.

3. *Sufficiency of clerk's certificate to transcript.*—It is not necessary that the clerk's certificate, appended to the transcript, should be under his seal, either private or official; nor is it necessary that either his signature or the authenticity of the transcript should be proved by evidence *aliunde*, since the court judicially knows who is the circuit clerk.

4. *What constitutes forgery.*—Under an indictment for forgery, a conviction may be had on proof that the prisoner uttered and published as true a forged instrument, knowing it to be forged.

5. *In what county offense is completed.*—A person, being at the time in one county,

may, through the hands of an innocent agent in another county, utter and publish as true a forged instrument in the latter county, so as to be there guilty of forgery.

6. *Comparison of handwriting by jury.*—A genuine signature of the supposed maker or endorser of the forged instrument, cannot be given in evidence, for the purpose of enabling the jury to compare the handwriting with that of the forged instrument.

From the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THE prisoner, Alfred Bishop, was indicted at the spring term, 1855, of the circuit court of Wilcox, for the forgery of a promissory note for $567, purporting to have been executed by one Charles R. Marshall, payable to one Charles Woodard, and endorsed by said Woodard; the indictment charging, in different counts, the forgery of the note, the forgery of the endorsement, and the uttering and publishing of both as true, knowing them to be forged.

The venue was changed, on the prisoner's application, to Dallas county; and on the case being there called for trial, he objected to being tried on the transcript, or exemplification of the record, "because it was not under seal, either private or official." The court overruled the objection, "and, without any proof of the genuineness of the signature purporting to be the name of the clerk, or of the genuineness of the exemplification, took jurisdiction of the case, and allowed the same to be read to the jury as evidence on the trial, and the prisoner to be tried upon the paper found in said exemplification purporting to be an indictment." The prisoner excepted to these rulings of the court, and, after conviction, moved in arrest of judgment, on the ground that the court had no jurisdiction under these facts.

The clerk's certificate, appended to the transcript, is in these words:

"The State of Alabama, ⎱  I, D. C. Gordon, clerk of the
      Wilcox County. ⎰ circuit court of said county, do hereby certify, that the foregoing pages, numbered from one to six, contain a true transcript of the caption of the grand jury in attendance upon the circuit court, at a term thereof begun and held on the second Monday after the

fourth Monday in March, 1855, it being the 9th day of April of said year; also, of the indictment, with the endorsements thereon, and all the entries relating thereto; the undertakings, or recognizances of the defendant, and all the orders and judgments of the same; orders for the removal of the trial, and all the other orders had and made in the case of the State v. Alfred Bishop, as appears of file with the original, and of record in my office."

"D. C. GORDON, Clk."

"It was proved on the trial," as the bill of exceptions states, "that the defendant resided, with his family, at Cahaba, in Dallas county, at the time of the supposed forgery and utterance, and, as a contractor to keep up the telegraph line from Cahaba to Mobile, frequently passed through Dallas, a small portion of Wilcox, Clarke, Washington, and Mobile counties; and that Marshall, the supposed maker of the alleged forged note, lived in Wilcox, and Woodard, the supposed endorser, lived in Clarke county, at the time of the supposed forgery. The evidence as to a forgery was all circumstantial: some circumstances tended to show a forgery by defendant, and some tended to show his innocence. The only evidence, tending to show a forgery in Wilcox, was the note being there offered to Marshall's administrator, by an agent of defendant, and paid to said agent by said administrator; and the defendant's telling said agent, before he sent the note, and while he was in Wilcox county, that he had such a note, with the endorsement thereon, &c. Said agent, who was examined as a witness for the State, testified, that said note came to his possession by and through a letter from defendant, mailed at Cahaba, and directed to him at Prairie Bluff, in Wilcox county, from the post-office at which latter place he received it.

"Under this evidence, the court charged the jury, 'that the presentation of said note to Marshall's administrator in Wilcox county, and its payment by him, was an uttering of said note by said defendant in said county of Wilcox; that if the note was uttered in Wilcox, and was a forgery, and defendant had it in Wilcox before it was uttered, the law presumed, in the absence of proof to the contrary,

that it was forged there, and the jury might, on this evidence alone, convict the defendant of forging the note in Wilcox: that if he did not forge it, it devolved on him, on its being found in his possession in Wilcox, to show that it was not forged there.' And to these charges, severally and collectively, the defendant excepted."

"During the trial, also, the State offered a genuine signature of said Woodard, the endorser, and asked that it be allowed to go to the jury, for the purpose of their comparing it with the alleged forged signature of said Woodard. The defendant objected to its going to the jury, without a previous examination and comparison by an expert or some other person, and his judgment and opinion thereon given to the jury as evidence. The court overruled the objection, and allowed said genuine signature to go to the jury for comparison alone; and the prisoner excepted."

All these rulings of the court, to which exceptions were reserved, are severally assigned as error.

Geo. W. Gayle, for the prisoner:

1. The exemplification of the record not being under the seal of the clerk, and no other proof being made of the genuineness and authenticity of the record, the court had no jurisdiction of the case.—6 N. H. 567–70; 2 Bibb, 334; 2 Cranch, 187; 2 Wheeler's Criminal Cases, 325; 4 Phil. Ev. 323, note; 3 Hawks, (N. C.) 185; Barbour's Criminal Law, 402; 1 Greenl. Ev. § 501.

2. The Code (§ 3613) requires an exemplification of the record to be forwarded to the county to which the trial is removed, as also (rule 20, p. 715) the original papers; and the prisoner cannot be thus tried on two separate and distinct indictments for the same offense. While these provisions of the law remain unaltered, the prisoner cannot be tried at all, and the change of venue is equivalent to a discharge. But if they are to be construed, *in pari materia*, as parts of one system, the prisoner should have been tried on the original papers.

3. The court erred, also, in allowing a genuine signature to go to the jury, for comparison, without even ex-

amining an expert.—2 Russell on Crimes, 363; Givens v. The State, 5 Ala. 747; Crist v. The State, 21 Ala. 137; Little v. Beasley, 2 Ala. 703; 1 Leigh, 228.

4. That the charge was erroneous, see 2 Russell on Crimes, 354–5; The State v. Parminter, 5 Pick. 270; Ogletree v. The State, 28 Ala. 693.

5. The verdict is general, on all the counts, for forgery and uttering; while there are three degrees of forgery.— Cobia v. The State, 16 Ala. 781; Thomas v. The State, 5 How. (Miss.) 32.

M. A. BALDWIN, Attorney-General, *contra*:

1. The prisoner is required to be tried, when the venue is changed, on an exemplification of the record. That the transcript was sufficient, see Brister v. The State, 26 Ala. 126; Ward v. The State, 28 Ala. 53.

2. On the question of comparison of handwriting by the jury, the American decisions are conflicting; but the recognized rule is, that irrelevant papers, when genuine, may be offered in evidence, where no collateral issue can arise concerning them.—1 Greenl. Ev. § 581, and cases there cited; Crist v. The State, 21 Ala. 137; 1 Chitty's Criminal Law, 581.

3. The charge of the court is correct. The offense was not complete, until defendant's agent had received the forged instrument by mail, and offered to pass it; and this was done in Wilcox.—21 Wendell, 509–33; 2 Mason, 470; 3 Scammon, 364; 1 McMullan, 236; Bishop on Criminal Law, 556.

4. There is no error in the verdict.—Johnson v. The State, 29 Ala. 62.

STONE, J.—The rule of practice numbered 20, on page 715 of the Code, is but a reprint of the same rule found in Clay's Digest, page 609. Twenty-three rules, including the one under discussion, were adopted by the supreme court at the January term, 1838. They were styled "rules of practice in the circuit and county courts." Although county courts had been abolished long before the adoption of the Code, yet we find these same rules,

the caption unchanged, published as an appendix to the Code. Said rules are repealed by the Code, to the extent that any provision of the latter is inconsistent with the former. Section 3613 of the Code is inconsistent with that part of rule 20, which makes it the duty of the clerk, on change of venue in criminal cases, to transmit any of the original papers; and, to that extent, repeals said rule. The circuit court rightly overruled all motions of the prisoner, based on the absence of the original indictment.

There is no provision of the Code, which requires the clerk to exemplify his records, in cases such as this, either by his official or private seal. Section 3613, after declaring what the transcript shall contain, commands him to "attach his certificate thereto." However the rule might be, if the record of another State were offered, the circuit court of Dallas had judicial knowledge who the circuit clerk of Wilcox was; and we regard the certificate in this cause sufficient to uphold the jurisdiction.—See Ingram v. The State, 27 Ala. 17; Doe, *ex dem.* Saltonstall v. Riley, 28 Ala. 164.

The main points of inquiry raised by the charge of the court, are—first, does the law authorize the conviction of a party, on a charge of forgery, on evidence which only proves that he uttered and published as true a forged instrument, knowing it to be forged? Second, can a party, who is at the time in one county, through an agent in another county, utter and publish a forged instrument, so as himself to be guilty of the offense in such latter county?

The Code (§ 3165) answers the first of these questions. Its language is: "Any person, who utters and publishes as true, and with intent to defraud, any forged or counterfeit instrument or writing, * * * the forging or counterfeiting of which is declared by this article to be an offense, knowing such instrument, writing [or coin] to be forged or counterfeited, must, on conviction, be adjudged guilty of forgery of such instrument or writing." Section 3158 declares, that the instrument charged in this case to have been forged, is one of the subjects of forgery in the second degree. These two sections are found in one and

the same article in the Code. The law declares, then, that one who is convicted of the crime of uttering and publishing, shall be adjudged guilty of forging the instrument. The charge only authorized the jury to draw the inference which the law itself draws; and in this respect, the charge is free from error.

The second question raised by the charge was elaborately considered by the supreme court of New York, in the great case of the People v. Rathbun, reported in 21 Wendell, 509. In that case, Cowen, J., stimulated, n doubt, by the magnitude of the case, reviewed and commented, with his accustomed ability, on the principal authorities both English and American. The prisoner, who had been a merchant of large operations and extensive credit, being in the city and county of New York, enclosed three notes of $5000 each, having forged endorsements on them, to a distant county in the same State, viz., Genesee; and, on the faith of the genuineness of the endorsements, received from the person to whom they were sent by mail his money obligations for a corresponding amount. The prisoner was indicted in the county of Genessee; and the question was, whether the prisoner, who at the time was in the county of New York, had uttered the forged instruments in the county of Genessee. It was adjudged that he had.

The principles of that case, and the authorities therein cited, authorize us to lay down the following propositions: First, so long as the forged instrument remains in the hands of an innocent agent of the forger, the crime of uttering is not perpetrated. Second, when the agent, being himself innocent, utters or publishes the forged instrument as true, the offense of uttering is complete, and the guilty principal, though in a distant county, is regarded as the author of the crime; and the crime is regarded as committed by him, at the place where the agent uttered the forged instrument. In such case, the agent is the mere instrument of his principal, and is no more guilty than any other instrumentality which a felon may employ to accomplish his ends. For all criminal purposes, the agency is as unimportant, as a mail-carrier

who bears a letter containing a forgery. Third, if the party who utters the forged instrument, be an accomplice, the rule of principal and accessory before the fact in the crime of uttering, determines the guilt of the respective parties.

These several propositions are fully sustained by authority, and they are, in substance, stated and approved by an able modern writer on criminal law.—Bishop on Criminal Law, vol. 1, § 556.

Upon these clear principles, we answer the second question stated above, in the affirmative. If it were necessary to consider the question, perhaps we might hold that the concluding paragraph of the charge had the effect of shifting the *onus* of proof to the shoulders of the prisoner, which is not allowable except in cases so declared by statute.—See Ogletree v. The State, 28 Ala. 693.

The objection last noted could have worked no injury, because, as we have shown, the one who knowingly utters as true a forged instrument, is adjudged guilty of the forgery. If the defendant was guilty of that offense in the county of Wilcox, it was unimportant where the forgery was in fact committed.

As this case must be reversed on the point yet to be considered, we will not comment further on the charge of the court.

The admission in evidence of what is described in the bill of exceptions as a genuine signature of the endorser, Woodard, that the jury might institute a comparison between it and the alleged forgery, is the only remaining question to be considered. That question has been twice before this court; and each time it was held, that papers foreign from the controversy, and having no connection with the case on trial, cannot be laid before the jury for any such purpose. In each the principle was recognized and admitted, that when the question of forgery is involved, and other papers bearing the disputed signature are legitimately before the jury, the papers themselves being pertinent to the issue on trial, the jury may institute a comparison. The reason of this exception to the general rule is stated to be this: that in such case the jury *will* compare the handwriting, and it is much safer to adopt

4

it as a principle, and thus give to the presiding judge the right to instruct that body in the rules to be observed by them while making such comparison.

In the case of Crist v. The State, the question was not one of forgery *vel non*. The prisoner was on trial for murder. As one means of proving that his conduct about the time the offense was committed bore suspicious marks, the prosecution attempted to prove that he, the prisoner, registered himself under a different name at each of the cities, New Orleans, Mobile and Montgomery. The several registers were in evidence before the jury, and were legitimately in evidence, as facts tending to prove on the prisoner that he had denied his true name, and attempted to travel under an assumed one. Whether the several names were in one and the same handwriting, was a very material inquiry. The jury were instructed, that they might compare the handwritings, with a view of ascertaining whether they were one and the same. This was clearly within the rule above laid down, and was not the case of a paper, having no connection with the issue, introduced for the purpose of comparison.—Crist v. The State, 21 Ala. 137.

In the case of Givens v. The State, 5 Ala. 747, the same question was considered as that presented by this record, and this court held the testimony inadmissible.

For the error in admitting the testimony above pointed out, the judgment of the circuit court is reversed, and the cause remanded.

Let the prisoner remain in custody, until discharged by due course of law.