# Mitchell *v*. The State.

## *Indictment for Murder.*

1. *Oath to jury; what sufficient recital; presumption.*—A recital in the judgment entry that the "jury being duly sworn according to law, the issue well and truly to try, and a true deliverance make, say upon their oaths," &c., is sufficient. The presumption is that the correct oath was administered, when it appears that the jury was sworn, unless it also appears that a substantially different or defective oath was administered (sustaining Walker's case, 49 Ala. 370; McCaller's case, Ib. 40; Crist's case, 21 Ala. 149, 150; Blair's case, 52 Ala. 344; De Bardelaben's case, 50 Ala. 180; Moore's case, 52 Ala. 424; Bush's case, Ib. 13; McNeill's case, 47 Ala. 503; Edward's case, 49 Ala. 334; Atkin's case, in MS.; McGuire's case, 37 Ala. 161; and overruling; Johnson's case, 47 Ala. 31 and 62; Smith's case, Ib. 545; Same, 53 Ala. 486; and Murphy's case, 54 Ala. 178.)

2. *Testimony of expert; physician.*—A physician who has had long experience in the practice of his profession, and a knowledge of the symptoms of the malady of the deceased, is competent to testify as an expert.

3. *Same; what will impair, though not render such testimony inadmisible.*—Where the physician testified that "he would not have come to the conclusion that the symptoms of the sickness and the death of deceased was caused by poison by arsenic, if he had not heard that there was arsenic in the house,"—the force of his testimony would be much impaired by such acknowledgement though it would still be admissible, and for the jury to decide whether it should influence their verdict.

4. *Service of copy of indictment and list of jurors ; presumption.*—In the absence of any objection in the court below, or anything in its records showing the contrary, it will be presumed that a copy of the indictment and list of jurors were duly served upon the prisoner before trial, as required by law.

APPEAL from Circuit Court of Bullock.

Tried before Hon. H. D. CLAYTON.

The appellant, Robert Mitchell, was indicted at the fall term, 1877, of said Circuit Court, for the murder of one Isabelle Hooks, by poisoning with arsenic, and on the 30th of April, 1878, was tried and convicted of murder in the first degree; and, on the 2d of May, 1878, was sentenced to be hung—the court fixing Friday, June 1st, 1878, as the day of execution.

On the trial, one Dr. G. A. Tompkins was introduced as a witness for the State, who testified that he had been a practicing physician for forty years, and that he attended deceased in her illness; that when he called to see her she was insensible and sleepless, and that her pulse was rapid; that he gave her some medicine without effect, and she died about twelve hours after he first saw her. He also testified, without objection, that he saw Sam Hooks, her husband, about the same time, and that both Sam and deceased had

(27)

[Mitchell v. The State.]

been suddenly and violently attacked, at the same time, with violent cramping in the bowels, vomiting freely a green matter, and purging. The State's attorney then asked witness to give his medical opinion as to the cause of the sickness and death of deceased, to which defendant objected on the ground that sufficient data had not been shown upon which to base a trustworthy opinion—the witness, not having been asked to state all of the symptoms ; but the court overruled the objection, and defendant excepted. The witness then gave as his opinion that " the deceased was poisoned by arsenic, and died from the effects of the same." Defendant's counsel then asked witness if his medical opinion was formed from the symptoms stated, to which witness answered, "No, and that he would not have formed that opinion as to the poisoning by arsenic if he had not been informed that Sam Hooks, her husband, had arsenic in his house for his hogs ; but learning this fact, he came to said conclusion from observation of the symptoms of the case." The defendant then moved the court to exclude the opinion of witness from the jury, upon the ground that it was not, in fact, a medical opinion, which motion the court overruled and defendant excepted. Other evidence, material to a conviction, but not necessary to be here stated, was introduced.

The court charged the jury that, in order to convict, "they must find that deceased came to her death from poisoning by arsenic."

The defendant now appeals from the judgment of the court below, and makes the following assignments of error :

1. The jury that tried the case was not sworn as required by law.

2. The admission of the evidence of the witness, Dr. Tompkins.

3. The defendant was not served in person with a copy of the indictment and list of jurors summoned for his trial, including the regular jury, as required by law.

FLEMING LEAN, for appellant.

JOHN W. A. SANFORD, Attorney-General, contra.

MANNING, J.—1. The record in this cause recites that the jury, " being duly sworn according to law, the issue well and truly to try, and a true deliverance to make, say upon their oath, that they find," &c. No objection was taken to the form of the oath when it was administered ; and it does not misdescribe the parties between whom the jury were to decide. The swearing of the jury was, of course, done orally

in the presence of the judge, the prisoner, the prisoner's counsel, and the audience which is generally assembled on such occasions. All are witnesses to the solemnity; and it almost never happens that it is incorrectly performed, by misreciting the terms of the oath. Ordinarily, only after the verdict has been rendered, and when it is about to be entered on the minutes of the court, is any record made therein of the swearing of the jury; and then the entry made of this is intended to be a record, not of the form of the oath, but of the fact that the jury had been sworn and acted under oath. A well trained clerk, who understands his business, and is duly careful to have the records of his court contain a correct and simple account of its proceedings, would not write more on this subject than that the jury were sworn according to law. And, though the minute entry of this fact is often unnecessarily verbose, it is to be understood only as a record inartificially made, of that fact, unless it appears that it is intended also to set forth the oath itself in the the form in which it was taken by the jury. The sum of our decisions on the question of error in swearing the jury is, that the correct oath will be presumed to have been administered, when it appears that the jury was sworn, unless it also appears that one substantially different, or defective, was administered.— *Walker v. The State*, 49 Ala. 370; *Mc-Caller v. The State, Ib.* 40; *Crist v. The State*, 21 Ala. 149-50; *Blair v. The State*, 52 Ala. 344; *De Bardelaben v. The State*, 50 Ala. 180; *Moore v. The State*, 52 Ala. 424; *Bush v. The State, Ib.* 13; *McNeill v. The State*, 47 Ala. 503; *Edwards v. The State*, 49 Ala. 334; *Atkins v. The State*, in MS.; *McGuire v. The State*, 37 Ala. 161. The cases of *Johnson v. The State*, 47 Ala. 31 and 62; *Smith v. The State, Ib.* 545; *Same v. Same*, 53 Ala. 486, and *Murphy v. The State*, 54 Ala. 178, being contrary to the decisions in the cases, *supra*, are overruled. There is no evidence in this record that the oath was not administered in proper form, and the assignment of error thereupon is not sustained.

2. The physician whose opinion was excepted to at the trial, was competent, from his long experience in the practice of his profession, and with the knowledge and information he was shown to have of the symptoms of the malady of the deceased, to testify as an expert. It was for the jury to decide whether his testimony should influence their verdict for or against the defendant.

3. When, on cross-examination, the witness said that, if he had not been informed that there was arsenic in the house, he "would not have concluded that the sickness and death was caused from poison by arsenic, but learning this fact he

came to the conclusion he did, from observation of the symptoms of the case, and from having heard that Sam Hooks had arsenic in the house;" certainly this acknowledgment greatly impaired the force of his testimony as evidence against the prisoner, but it was not inadmissible. There was no error in the refusal to rule it out.

4. In *Paris v. The State* (36 Ala. 235), in reference to "the silence of the record in the matter of the service of a copy of the indictment, and a list of the jurors, two entire days [now one day] before the trial, and in the matter of a formal arraignment pleaded," this court said, " although these are among the clear legal rights of one who stands charged with a capital felony, still—they are not of that high grade—do not so enter into the essence of the trial by jury, that the record must, in all cases, show affirmatively that they have been observed. When, as in this case, the record affirms that the prisoner being brought to the bar pleads not guilty, and thereupon a jury is empanneled and the trial progresses in usual form to a verdict of guilty, and sentence of the law pronounced thereon, . . . [and] no objection or exception appears to have been made in the court below, questioning the regularity of any preliminary step in the prosecution, we but conform to our former decisions, in presuming that all has been regularly done which does not appear by the record to have been otherwise." Numerous cases are cited to support this ruling ; and we have heretofore readopted it and overruled *Robertson v. The State* (43 Ala. 325) so far as it lays down a different rule in respect to service of a list of the jurors upon the prisoner. According to the present record, an order was made, after arraignment and plea, setting a day for the trial and ordering the sheriff to summon fifty jurors besides those on the regular panels for the week, and that a list of the jurors and copy of the indictment be served on the prisoner, &c.; and it is further recited that the sheriff returned into open court a *venire* of fifty persons in addition to the regular panels, " from which was duly selected, empanneled, and sworn, a jury to try this case." No irregularity in this matter was complained of in the court below, and the presumption is that there was not any.

The judgment of the Circuit Court must be affirmed. And inasmuch as the execution of the sentence of said court was suspended until the determination of this court be had upon the appeal to it, and the day appointed for such execution has elapsed, now, in obedience to the statute in such case made and provided, this court orders that the sentence of the Circuit Court be executed, according to law, on Friday, the twenty-third day of August next, in the present year.