# Myers *v.* The State.

## *Indictment for Murder.*

1. *Evidence; what admissible.*—The credibility of evidence is a pure question for the jury. When testimony tends to elucidate a material issue in the case, no matter how little light it may shed on the controverted question, it must be received, and its weight and credibility left to the jury.

2. *Self-defense; what is.*—Where it is shown that the accused and the deceased had quarreled on the day previous to the killing, and that when they met on the day of the killing, the accused commenced the fatal quarrel and made the first hostile demonstration, and advanced on the deceased in a threatening manner, the deceased could strike in anticipation, provided he did not employ unreasonable force in repelling such assault, and such blow would be self-defense, although the first stricken.

3. *Killing; what will not justify or excuse.*—When the accused is the aggressor, and is threatening the deceased with present danger, a blow struck by the deceased, although first struck, if not greatly disproportionate to the peril, will neither excuse nor mitigate the killing; and, in such a case, the previous state of feeling between the parties, or the fact that the deceased had made threats, should exert no influence on the decision of the case, unless there was some present impending purpose, real or apparent, to carry out such threats.

4. *Evidence; what should be admitted.*—When there is an absence of proof as to the attitude of the parties at the outset of a fatal rencontre, evidence of statements by the deceased of his purpose in visiting the place at which the difficulty took place, should be received, to show the state of feeling between the parties.

5. *Same; what admissible.*—Threats made by the accused prior to the killing are admissible against him on a trial for the killing.

6. *Charge; what proper.*—When there is evidence of previous difficulties between the slain and the accused, and of a fight in which one is slain, a charge by the court, "that murder in the first degree is when a homicide is committed with a specific intention to take life, deliberately formed and acted upon, or where a killing results from a reckless disregard of human life; but if neither of the above ingredients is shown by the testimony, and the proof shows the killing was done with malice, it is murder in the second degree. If, however, it is shown by the testimony that the killing was not done with a specific intention, nor from a reckless disregard of human life, nor with malice, yet voluntarily done, it is manslaughter in the first degree; and if a killing is done under circumstances which do not make it murder in the first or second degree, or manslaughter in the first degree, and yet is done without legal provocation, and not in self-defense, it is manslaughter in the second degree,"—correctly states the law of homicide, and is properly given.

APPEAL from Russell Circuit Court,
Tried before Hon. W. B. WOOD.

[Myers v. The State.]

The appellant, 'Squire Myers, was indicted for the murder of one George Boykin. On the trial, it was shown that on the day before the killing, the accused and the deceased, in company with others, were at the boat landing at Bluffton, on the Georgia side of the Chattahoochee river; that deceased told accused that he could not ride in his boat unless he paid him a nickel which he already owed him; that defendant told deceased that he would not pay him the nickel, and would kill him on any part of the ground he could find him. On the morning of the homicide, deceased, defendant, and several others met at the house of one Dick Patterson, who testified that on his return from a walk over his crop, he built up a large fire, around which all the persons present gathered; that he went out to fix the well bucket, and afterwards engaged in conversation, outside the door, with the deceased, George Boykin; that, while so engaged, the defendant, who had been lying down in another room, came out and spoke with deceased, and then asked him " why it was those locks had not been delivered up," to which deceased replied " that those locks were all right, and he could get them." Defendant then said "it was damned strange the locks had not been delivered up," and he demanded that it should be done without further delay. Deceased said : " Squire, you need not talk so smart about it; the locks are down at my house, and you can get them right now if you go after them." Defendant then said, " you ought to have delivered them long ago," and that he did not like the way deceased treated him the day before, down at the river, about that boat; to which deceased replied : "You threatened my life down there yesterday, and I'll let you know that if I had been over there when you threatened me yesterday, you or me one would have had to go to hell, right there." Defendant then said : " You shall have a trial of it now," and got up from where he was sitting. Patterson then spoke up, and told them that they "must stop and not have any fuss here." This witness further testified that he heard several licks behind him, and, on looking around, he saw defendant cut deceased, just over the right ear, with a pocket knife, and saw deceased stagger and fall; that witness then ran in the house and got his shot-gun, and ran back with it, when he saw defendant coming with an ax, and ordered him to stop, which he did; that soon after this, one Robbins came up and pulled the knife out of the head of deceased; that the wounded man was then carried into witness' house, where he died five days afterwards.

Asberry Walton testified that one night, some three or four weeks before the killing, he was going along the road behind

[Myers v. The State.]

defendant, and heard him cursing deceased, and saying he was a damned rascal; that he had defendant's locks, and would not give them up. The defendant moved the court to exclude the testimony of this witness, but the court refused to do so, and defendant excepted.

Several witnesses for the State testified, as to what took place at the river on the day before the killing, substantially as the witness Dick Patterson had done. It was also shown that, shortly after the difficulty which resulted in the death of deceased, his stick (which was a hickory one) was found near where he had fallen. It was admitted that if one Edney Walton, a witness for the defendant, was present, she would testify as follows: "That she resided in the house of defendant's mother, on the plantation of Mr. M. L. Patterson; that on the Sunday morning on which the killing took place, deceased came by the house with a hickory stick in his hand, about an inch in diameter, and asked if Squire Myers was there. Witness told him no, to which he replied: 'Well, I am hunting him; that is my business up here to-day. I have got to kill him or he kill me.' Defendant then asked witness if Squire was up to Dick Patterson's house, to which she replied that she thought he was; and, thereupon, deceased went off directly in the direction of Dick Patterson's house, which was distant about half a mile." The solicitor objected to the introduction of this evidence, on the ground that it had not been proven that the threats mentioned were ever communicated to the prisoner before the killing. The court sustained the objection, and excluded the testimony, and defendant excepted.

The court then charged the jury as follows: "Murder in the first degree is where a homicide is committed with a specific intention to take life, deliberately formed and acted upon, or where a killing results from the reckless depravity of the heart, evidencing a reckless disregard of human life. But if neither of the above ingredients is shown by the testimony, and the proof shows the killing was done with malice, it is murder in the second degree. If, however, it is shown by the testimony that the killing was not done with a specific intention, nor from a reckless disregard of human life, nor with malice, yet voluntarily done, it is manslaughter in the first degree. But if you find from the evidence that the defendant is not guilty of murder in the first or second degree, nor of manslaughter in the first degree, then if the testimony shows that he killed him without legal provocation, and not in self-defense, it would be manslaughter in the second degree. 1. If the jury believe, from the evidence, that the defendant, in Russell county, before the finding of the

indictment, killed George Boykin wilfully, deliberately, maliciously, and premeditatedly, he is guilty of murder in the first degree, and you will so find. 2. Or if you believe, from the evidence, that the defendant killed George Boykin from a reckless depravity of the heart, evidencing a reckless disregard of human life, it is murder in the first degree, and you will so find. 3. But if you believe that it was not done with a specific intention to take life, deliberately formed and acted upon, nor from a reckless disregard of human life, but that he killed him with malice aforethought, then he is guilty of murder in the *second degree*, and you will so find. 4. If, however, you believe, from the testimony, that the offense of murder in neither the first nor second degree is established, then if you believe, from the testimony, that defendant killed George Boykin voluntarily, without malice, and without a necessity therefor, it is manslaughter in the first degree, and you will so find. 5. But if you believe the evidence does not establish murder, nor manslaughter in the first degree, then if the testimony shows that defendant killed Boykin without a necessity to save his own life, or prevent great bodily harm, then it is manslaughter in the second degree, and you will so find. But if you find that defendant did kill Boykin, but that it was done under circumstances which induce a reasonable belief that deceased intended to take defendant's life, or to do him some great bodily harm, and the purpose to execute the design was accompanied by some attempt to execute it, or the deceased, at least, was in an apparent situation to do so, and so induced a reasonable belief that he intended to do so immediately, then it would be self-defense, and he is not guilty. If, however, the defendant brought on the combat, he can not avail himself of the plea of self-defense. When life is taken by the direct use of a deadly weapon, the law presumes malice, from the use of a deadly weapon, and casts on the defendant the burden of proof of repelling the presumption, unless the evidence which proves the killing shows also that it was done without malice."

There were various charges given and refused by the court below, which, in the view this court takes of the case, it is not necessary to notice further. The defendant was found guilty of murder in the first degree, and sentenced to be hanged. From this judgment and sentence he appeals to this court.

ULYSSES LEWIS, for appellant.

HENRY C. TOMPKINS, Attorney-General, *contra*.

STONE, J.—The credibility of evidence, legal and pertinent to the issue, is clearly a question for the jury. True, the court may and should lay down rules for weighing testimony in proper cases. It can go no farther. When testimony tends to elucidate any material matter of contestation in the trial, is not too remote, and is not introduced for the purpose of supplying an analogy in argument, it must be received, and its weight considered by the jury. Neither the Circuit Court nor this court can pronounce such testimony worthless or unavailing. The evidence in the present record tends to show the prisoner and the deceased had quarreled the day before, and threats were made. When they met the following morning, if the statement of the first witness for the State be correct, the prisoner made the first offensive remarks which brought on the rencontre, made the first overture to fight then and there, and, by his movements, made the first hostile demonstration. If this be so, and if the accused advanced on the deceased in a threatening manner, the deceased could strike in anticipation, provided he did not employ unreasonable force in repelling the impending assault; and such blow would be self-defense, although the first stricken. If the positive testimony, or circumstances, show with the requisite certainty that defendant was advancing on deceased, or menacing him with present danger, having, in either event, a drawn knife or other deadly weapon; or, being in the act of drawing such deadly weapon, then, a blow by the deceased, although the first struck, to save himself from such impending peril, would not constitute him the aggressor, but would stand justified under the law of self-defense. And if these be the facts, then such first blow struck by the deceased, if not greatly disproportioned to the peril, would neither excuse nor mitigate the fatal wound inflicted by the prisoner. A man may not bring on or provoke a difficulty, and then justify the use of deadly weapons, under the plea of self-defense.—*Lewis v. The State*, 51 Ala. 1; *Eiland v. The State*, 52 Ala. 322; Clarke's Manual Cr. Law, sections 377-8. On this theory of the case, the previous state of feeling between the parties, and any threats that may have been made prior to that time by the slain, should exert no influence on the jury, unless there was a present impending purpose on his part, real or apparent, to put such threats into immediate execution.—Clarke's Manual, sections 384–6, 392.

There is an absence of proof in the present record of the exact attitude of the parties at the onset of the rencontre. Whether the accused was advancing with a weapon drawn, or in the act of being drawn, what was the attitude of the deceased at that time, these are questions upon which there

is no positive proof. The purpose of the deceased in visiting the place where the homicide was committed, may shed some light on this question. But, as we have said, his purpose and any uncommunicated threats he may have made, should weigh nothing with the jury, if the deceased did not first make some demonstration of an intention to carry them into present effect. Under the circumstances of this case, and with the cautionary limitations expressed above, the testimony which it was admitted Edney Walton would give, if present, should have been allowed to go to the jury, as tending to show the state of feeling entertained by the deceased towards the accused, and the purpose he had in going that morning to the house of Dick. Patterson. If, however, his only purpose was to resist an assault, should it be made upon him, and he made no visible demonstration of a present intention of carrying the threat into execution, this would neither excuse nor mitigate the conduct of the accused. *Hughey v. The State*, 47 Ala. 97 ; Clarke's Manual, sections 396–8 ; *Copeland v. The State*, 7 Humph. 479 ; *The State v. Sloan*, 47 Mo. 604 ; *Pridgen v. The State*, 31 Tex. 420 ; *People v. Scoggins*, 37 Cal. 676.

In the late cases of *Mitchell v. The State*, 58 Ala. 417, and *Ex parte Nettles*, 58 Ala. 268, we discussed the doctrine of murder under our statutes so fully, that we consider it unnecessary to comment on the charge of the court in this case. It fairly presents the true doctrine of murder, as raised by the testimony, and that was enough for the present case. Charges asked and refused will scarcely arise again in their present form, and we will not consider them. The Circuit Court did not err in receiving evidence of threats previously made by the accused.—*Evans v. The State, ante*, p. 6.

Reversed and remanded. The prisoner will remain in custody until discharged by due course of law.