# Jackson *v.* The State.

## *Indictment for Murder.*

1. *Competency of coroner as juror.*—A person filling the office of coroner may, as a personal privilege, claim exemption from service as a juror (Code, § 4734); but he may waive this privilege, and is not subject to challenge for cause on account of it.

2. *Indorsements on indictment; variance in spelling foreman's name.*—When the record affirmatively shows that the indictment was returned into court, indorsed and filed, as required by the statute (Code, § 4821), a variance in the spelling of the foreman's name, as copied in the indorsements, is immaterial, when the names are strictly *idem sonans*.

3. *Misnomer, and variance.*—The names *Booth* and *Boothe* are strictly *idem sonans*.

4. *Objections to verity of indictment.*—Objections to the genuineness of an indictment as a court record must be raised in the court below, before pleading to the merits, by timely motion to quash, or to strike the paper from the files; and can not be raised, for the first time, in this court.

5. *Competency of juror opposed to capital punishment on circumstantial evidence.*—The statute making it good cause of challenge by the State, that a person "has a fixed opinion against capital punishment, or thinks that a conviction should not be had on circumstantial evidence" (Code, § 4883); a person who states, on his *voir dire*, that he is not opposed to a conviction on circumstantial evidence, but is opposed to punishing capitally on such evidence, is subject to challenge for cause, when the indictment charges a capital felony.

6. *General verdict, under indictment containing several counts.*—When an indictment contains two or more counts, each charging the commission of the same offense, but with different means or instruments, the jury are not bound to acquit, because they may entertain a reasonable doubt as to which of the means or instruments was used; nor can they be required, by instructions on the part of the court, to specify in their verdict the particular count on which it is founded. (Limiting *Givens v. The State*, 5 Ala. 747, to cases in which different offenses are charged in the several counts, and in which the prosecution might be compelled to elect.)

7. *Malice.*—Malice, whether express or implied, is not an ingredient of manslaughter; and whenever it is established to the satisfaction of the jury, beyond a reasonable doubt, there can be no conviction of any less offense than murder.

8. *Charge as to manslaughter.*—A charge requested which, admitting the killing with a deadly weapon, ignores the question of malice, and instructs the jury that they can not convict of a higher offense than manslaughter, is properly refused.

[Jackson v. The State.]

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The defendant in this case, George Jackson, was indicted for the murder of Adam Howard, "by striking him with a gun," or, as alleged in the second count of the indictment, "by cutting him with a razor;" and being duly arraigned, and tried on issue joined on the plea of not guilty, he was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of ten years. On the trial, as the bill of exceptions states, during the organization of the jury, when the name of M. P. Blue was drawn and called, he being one of the special *venire* summoned for the trial, the defendant objected to his competency as a juror, "because he is the coroner of the county, and it is his duty to sit in judgment and inquire into just such cases as this." The court overruled the objection, and the defendant excepted. When the name of W. R. Noble was called, he being also one of the special *venire*, "in reply to the question, whether or not he thought a conviction should be had on circumstantial evidence," he answered: "I am opposed to hanging on circumstantial evidence, but am not opposed to a conviction on circumstantial evidence." The court thereupon ruled that said Noble was not a competent juror, and ordered him to stand aside; to which ruling and action of the court the defendant objected and excepted.

The evidence adduced on the trial, as set out in the bill of exceptions, showed that, on the day of the homicide, the deceased went into his own house, and, finding his wife in conversation with the defendant, got a razor out of his trunk, and cut the defendant several times with it; that the defendant ran from the house, pursued by the deceased, who threw a brick at him as he jumped the fence ; that the defendant went to his own house, armed himself with a gun and razor, returned to the house of the deceased, and attempted to shoot him through the window; that the deceased, on seeing him, ran from the house, pursued by the defendant with several dogs, and, after running more than a quarter of a mile, took refuge in a swamp, where he was overtaken by the defendant, and killed, being "knocked down with the gun, and then cut in a great number of places with a razor." The evidence did not show the character of any of these wounds, nor was it shown which one produced death; and if there was any evidence as to these matters, it is not stated in the bill of exceptions. The defendant proved "that he had a good character for peace and good conduct."

The above being "substantially all the evidence," the court charged the jury, on the request of the solicitor, as follows: "When the killing is shown to have been done with a deadly

weapon, the law implies malice from the use of the weapon, and the burden of proof is on the defendant to rebut this presumption; unless the evidence showing the killing, itself shows there was no malice; and whenever malice is shown, either express or implied, there can be no conviction of any less offense than murder." The defendant excepted to this charge, and requested the following charges, which were in writing:

"1. If the jury have a reasonable doubt as to what killed Adam Howard,—whether it was by being struck with a gun, or by cuts with a razor,—then they can not convict the defendant of any offense under this indictment.

"2. If the jury are not satisfied from the evidence, beyond all reasonable doubt, as to how the defendant killed Adam Howard, and as to the manner of the killing,—whether it was done by striking him with a gun, or by cutting him with a razor,—then the jury must acquit the defendant under both counts in the indictment.

"3. Unless the jury believe from the evidence, beyond a reasonable doubt, that the defendant killed Adam Howard by striking him with a gun, they can not convict the defendant of any offense at all under the first count in the indictment; and unless they believe from the evidence, beyond all reasonable doubt, that the defendant killed Adam Howard by cutting him with a razor, they can not convict the defendant of any offense at all under the second count in the indictment.

"4. If the jury believe, from the evidence, that the difficulty between the defendant and the deceased started by the deceased cutting the defendant with a razor, while sitting quietly and inoffensively in the house of the deceased; and that the deceased pursued the defendant to his house, hurling a brick at him, and then returned to his own house; and that the defendant, immediately thereafter, came to the house of the deceased, with his gun and razor; and that the deceased ran, pursued by the defendant, with blood flowing from his arm; and that when the defendant caught up with the deceased, a fight was had between them, in which the deceased was killed; or, if they believe that the defendant killed the deceased under these circumstances,—then the jury can not find the defendant guilty of a higher offense than manslaughter in the first degree."

The court refused each of these charges, and the defendant duly excepted to their refusal.

The name of the foreman of the grand jury, as copied in the minute-entry of the organization of the jury, was *J. A. Booth;* and in the indorsement on the indictment, as copied in the transcript, the name is spelled *J. A. Boothe.* One of the assignments of error in this court was founded on this alleged variance; and the charge of the court, as well as the

[Jackson v. The State.]

refusal of the several charges asked; was also assigned as error.

WATTS & SON, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—The fact that one offered as a juror fills at the time the office of *coroner* furnishes no lawful ground for challenge under the laws of this State. The statute does not disqualify him from serving as a juror, but only declares that he shall be " exempt from jury duty, unless by his own *consent.*"—Code, 1876, § 4734. This right of exemption is clearly a mere personal privilege, which may be claimed, or *waived* by him, at his option.—*Spigener's case*, 62 Ala. 383. The City Court so ruled, and its action is free from all objection.

The fact is sufficiently patent from the record, that the indictment found by the grand jury was one of the number returned by them to the October term, 1883, of the City Court of Montgomery. This indictment is shown to have been indorsed " a true bill," by the foreman of this body, and was also indorsed by the clerk of the court as " presented in open court," in presence of the other members of the grand jury, and " filed " on the 20th day of October, 1883. This indorsement was furthermore signed by the clerk. The requirements of the statute were thus literally complied with, beyond all question of doubt.—Code, § 4821 ; *Wesley's case*, 52 Ala. 182.

The variance in the spelling of the foreman's name was entirely immaterial. His true name, as shown by the record, appears to be *J. A. Booth*. As indorsed upon the indictment, it is spelled *J. A. Boothe*. The two names are strictly *idem sonans*, and must be construed to be legally the same.—*Stedman's case*, 7 Port. 496.

Moreover, objections of the foregoing character, going to the *genuineness* of an indictment as a court record, can not be interposed in this court for the first time. They should be raised in the court below, before pleading to the merits of the case, by timely motion to quash, or to strike the paper from the files. This course is not shown to have been pursued. *Sparrenberger's case*, 53 Ala. 481; *Clark's case*, 3 Ala. 378 ; *Nixon's case*, 68 Ala. 535.

The court did not err, in our opinion, in holding the juror Noble to be incompetent to serve, under the provisions of the statute. Section 4883 of the present Code declares it to be a good cause of challenge by the State, in capital cases, that the person " has a fixed opinion against *capital*, or penitentiary punishment," or " thinks that a conviction should not be had

[Jackson v. The State.]

on *circumstantial evidence.*" Noble declared, when examined on his *voir dire*, that while he was not opposed to a *conviction* on circumstantial evidence, he was opposed to *hanging*, or punishing capitally, on such evidence. He had, in other words, a fixed opinion against capital punishment, as prescribed by the laws of this State, based on circumstantial evidence. This was sufficient to disqualify him under the statute, the policy of which is to place positive and circumstantial evidence upon the same basis of equality, so as to abolish all prejudice or discrimination against them, as media or instrumentalities for arriving at the truth, in the process of judicial investigation of capital felonies against the State.

It is insisted that the court below erred in refusing to give the several charges requested by the defendant, the purpose of which was to compel the jury to elect under which count of the indictment they would find a verdict of guilty. The first of these counts averred the killing to have been done by striking with a *gun*, and the second by cutting with a *razor*. It is our opinion that these charges, according to the sounder view, were properly refused. The purpose of joining the two counts, as shown by the evidence, is not to charge two separate and distinct offenses, but to vary the description of one and the same offense. The theory of the law, in permitting several counts in such cases, is to meet every probable contingency of the evidence. Under such a state of facts, the State can not be compelled to elect under which particular count it will conduct the prosecution. Neither can the jury any more be forced, by instructions of the court, to elect under which count they will convict. They may well be satisfied, beyond a reasonable doubt, that the defendant is guilty as charged in the indictment, and yet may entertain serious doubts as to the mode of death, or the instrument by which the mortal wound was inflicted. It would result in a lamentable maladministration of justice, if the principle should obtain, that the defendant should be acquitted of murder, or other homicide, because the jury entertained doubts as to the kind of instrument used in perpetrating the killing, although they might be sure it was done with one of two instruments, and each mode of killing was properly described in the indictment. If the grand jury were not satisfied as to the mode of death, it was competent for them to charge the crime in several counts, or in the same count, so as to meet every possible contingency of the evidence on this point; and neither the State, in the first instance, nor the jury, in the progress of the trial, could be compelled to elect under which particular count a conviction should be had or procured.—1 Whart. Cr. Law, §§ 421, 423–424; Whart. Hom. §§ 819, 857, 906 ; *Com. v. Desmarteau*, 16 Gray, 1.

[White v. The State.]

It was said in *The State v. Givens*, 5 Ala. 747, that the jury should be instructed, at the request of the defendant, to express by their verdict on which count they render their verdict of guilty. The rule there declared is erroneous, when applied to cases like the present, where the several counts in the indictment are intended to vary the description of the same offense. It must be modified, so as to be limited to those cases only where the doctrine of election applies, or where the various counts of the indictment are intended to describe offenses which are separate and distinct.—1 Bish. Cr. Prac. § 449, *note* (3).

We see no error in the charge given at the request of the State. *Malice*, either express or implied, is often said to be the very essence of murder, and can not be an ingredient of manslaughter. There could, therefore, be no conviction of any less offense than murder, if the existence of malice, or, as more commonly designated "malice aforethought," was proved to the satisfaction of the jury, and beyond a reasonable doubt. Whart. on Hom. § 4; 4 Black. Com. 191; Clark's Man. Cr. Law, §§ 412, 419; 2 Bish. Cr. Law, §§ 677, 672.

The fourth charge, requested by the defendant, was properly refused. The charge, in effect, instructs the jury, that upon the given state of facts, which admit the killing with a deadly weapon, they could not convict the defendant of a higher grade of homicide than manslaughter, without any regard to the existence of malice. The charge is defective, in withdrawing from the jury all consideration of the question of malice, which itself determined the degree of the crime.

We find no error in the record, and the judgment is affirmed.