# Williams *v.* The State.

### *Indictment for Forgery.*

1. *Forgery; sufficiency of indictment.*—An indictment which charges that the defendant, "with intent to injure or defraud, did falsely make or forge an instrument in writing in words and figures substantially as follows," and then sets out the instrument alleged to have been forged, which was a bank check, sufficiently charges the offense of forgery; and in such an indictment a conviction may be had for forging the name of the drawer of the check, although he may have been a fictitious person.

2. *Same; offense can be committed by signing name of fictitious person.*—A forgery may be committed by the falsely making of an instrument in the name of a fictitious person.

3. *Same; admissibility of evidence.*—On an indictment charging the forgery of a bank check, wherein the defendant is a beneficiary, the testimony of a person to whom the check was dis-

[Williams v. The State.]

posed of by the defendant, that he made inquiry of the person whom the defendant informed him drew the check, and also of another person bearing the same surname, and that he was unable to find any person who bore the same name as the one signed to the check, the check is admissible in evidence as tending to prove that the name affixed to the check as drawer was that of a fictitious person.

4. *Same; same.*—On a trial under indictment for forgery of a bank check, it is competent for the teller in the bank on which the check was drawn to testify that no person bearing the name affixed to the alleged forged instrument as drawer kept or had any account with said bank; and such testimony is *prima facie* evidence of the fictitious character of the check.

5. *Same; inference as to the act of forgery.*—On a trial under an indictment for the forgery of a bank check, in which the defendant is named as a beneficiary in said check, where there is evidence tending to show that the name of the drawer of said check was fictitious, it is a question for the jury to determine whether or not the drawer was a real person or was fictitious; and if the name of the drawer affixed to said check was fictitious, an inference that the defendant forged said instrument, arises from proof of the fact that he uttered and published it as true.

6. *Same; fact that forged check had no revenue stamp no objection to its admissibility in evidence.*—On a trial under an indictment for the forgery of a bank check which is set out *in haec verba* in an indictment, it is no objection to the introduction of the check described in the indictment that it was not stamped with a revenue stamp as required by the act of Congress.

7. *Same; admissibility of evidence.*—On a trial under an indictment for the forgery of a bank check, where the evidence tends to show that the name affixed to the alleged forged check was fictitious, it is competent for the State to prove that at the time of the negotiation of the check in question the defendant had other checks signed by the same name, and also that he negotiated another check signed by the same name to a third party.

8. *Same; return of money no defense.*—On a trial under an indictment for forgery of a bank check, the fact that the defendant refunded to the person to whom he negotiated the forged instrument the money obtained from him upon the sale of said

check after the bank's refusal to honor it, is no defense.

9. *Same; indictment; not necessary to aver intent to defraud any particular person.*—Under our statute, (Code, § 4908) a general allegation in an indictment charging forgery of an intent on the part of the defendant to defraud, without naming any particular person or corporation, intended to be defrauded, is sufficient; and if it is shown on the trial' that the intent to defraud induced the forgery or. utterance of the spurious instrument with capacity to defraud any person, the offense is complete.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The appellant in this case, Stephen Williams, was indicted, tried and convicted for forgery and sentenced to the penitentiary for three'years. The indictment was in the statutory form and set out the instrument alleged to have been forged *in haec verba.* This instrument was a check on the Bank of Montgomery for fifteen dollars signed by J. D. Johnson and made payable to the "order of Stephen Williams." On the trial of the case, W. A. LaPrade, a witness for the State, testified that he obtained the instrument which was the check described in the indictment from the defendant; that at the time the check was given to him, the defendant told him that it had been signed by Johnson, who lived in the southern suburbs of the city of Montgomery, and given to the defendant for the payment of work done for said Johnson. The witness LaPrade was asked whether he ever saw any other check signed by J. D. Johnson, in the possession of the defendant? The defendant objected to this question, on the ground that it called for illegal and incompetent ·evidence, and that the answer of the witness could have no tendency to prove or disprove the allegations of the indictment. The court overruled the objection, and the defendant duly excepted. The witness answered that he had seen other checks, and upon being asked how many checks the defendant had at the time referred to, he answered "as many as two or three." This last question was asked and the answer thereto allowed to go to the jury, against the objections and exceptions of the defendant. The witness was then asked by the solicitor to

state whether he had ever made any effort to find J. D.
Johnson? The defendant objected to this question on
the ground that it called for illegal, irrelevant and in-
competent evidence, and that there was no averment in
the indictment that J. D. Johnson was a fictitious per-
son, and that the answer to the question did not tend
to prove or disprove the allegations of the indictment.
The court overruled this objection and the defendant
duly excepted. The witness answered that he had made
inquiries but had never found him, and then detailed the
effort he had made to find J. D. Johnson, stating that the
man referred to by the defendant as being the one who
had signed the check, denied having made it, and stated
that his name was not J. D. but A. B. Johnson. It
was then shown that the check was never paid. The
State then offered to introduce in evidence the check re-
ferred to, and which was described in the indictment.
The defendant objected to the introduction in evidence
of said check upon the ground that there was no evidence
that J. D. Johnson did not sign the check; and that said
check was not stamped in accordance with the revenue
laws of the United States. The court overruled this ob-
jection, allowed the check to be introduced in evidence,
and to this ruling the defendant duly excepted. The wit-
ness LaPrade then testified that the next time he saw
the defendant he told him that the check had not been
paid, and that the defendant then paid him the amount
of said check; and further testified that he did not know
who signed the check; that he had seen the defendant's
handwriting, and that the check was not in the hand-
writing of the defendant. The State then introduced as
a witness one Joshua Jones, who testified that he was
paying teller of the Bank of Montgomery during the
month of August, 1899, which was the month in which
the check was alleged to have been drawn. Upon being
handed the check he was asked if it was paid. The de-
fendant objected to this question on the ground that it
called for illegal, irrelevant and incompetent evidence,
and duly excepted to the court's overruling his objec-
tion. The witness answered that the check had not been
paid. This witness was further asked the following

question: "Did any such person as J. D. Johnson have a deposit with your bank?" The defendant objected to this question upon the same grounds as interposed to the other question, and duly excepted to the court's overruling his objection. The witness answered that no person of the name of J. D. Johnson had a bank account in said bank. The defendant as a witness in his own behalf testified that he had the check introduced in evidence and transferred it to the witness LaPrade and re-received from him, LaPrade, the sum of $15; that he, the defendant, received the check from a man who lived in the southern suburbs of the city of Montgomery, for whom he had done work, and that the man who gave him the check stated that his name was J. D. Johnson; that Johnson owed him $30 or $35 for work done by him, and that this check was in part payment of that debt; that he did not sign the check, and that when he found out from LaPrade that the check was not paid, he paid him the amount thereof. Upon his cross-examination, the defendant stated that he knew one S. O. Bray, and the solicitor asked the defendant if he did not give Bray a check signed J. D. Johnson. The defendant objected to this question, on the ground that it called for illegal, irrelevant and incompetent evidence, and duly excepted to the court's overruling his objection. The witness answered that he did give Bray a check.

The court in its general charge to the jury instructed them *ex mero motu* as follows: "The fact that the defendant paid the amount mentioned in the check to La-Prade after LaPrade discovered that the check was of no value, cuts no figure in this case; that is to say, it is no excuse for the defendant if he forged the check."

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence, they must find the defendant not guilty." (2.) "Unless J. D. Johnson was a real person the defendant can not be convicted under this indictment." (3.) "It is immaterial whether or not there was any bank account of J. D. Johnson at the Bank of Montgomery." (4.) "Before the defendant

can be convicted each and every man on this jury must
be morally certain that the check alleged to have been
falsely made or forged was so done with an intent to in-
jure or defraud W. A. LaPrade."    (5.)  "The jury must
attach no importance to the evidence that other checks
than the one introduced in this case were given by Steve
Williams."    (6.)  "The fact that Steve Williams paid
the check is a circumstance in his favor."

HILL & HILL, for appellants.—The question asked the
witness LaPrade "Did you ever see any other checks
signed J. D. Johnson that the defendant had?" was
patently subject to the objections of the defendant.    A
responsive answer to the question asked could not un-
der any phase of the case be clothed with relevancy and
competency.—3 Greenleaf on Evidence, §§ 111, 111a;
(13th ed.) and notes; *Tharp v. State*, 15 Ala. 756; *Mc-
Donald v. State*. 83 Ala. 48; 8 Amer. & Eng. Encyc. of
Law, (1st. ed.), 531 and 532; *Whitaker v. State*, 106 Ala.
32.

CHAS. G. BROWN, Attorney-General, for the State.
The indictment was in the form prescribed by the Code.
There was no necessity for alleging that J. D. Johnson
was a fictitious person.—See Criminal Code of 1896,
Form 51; *Thompson v. State*, 49 Ala. 16; 2 Bishop's New
Cr. Law, § 543.

"Forgery may be committed by the false making of a
written instrument in the name of a fictitious person;
and neither the fact that the drawer of the forged check
is a fictitious person, nor that the drawer had any funds
in the bank, is any defense to the indictment."—2 Mc-
Clain's Cr. Law § 766; *People v. Marion*, 29 Mich. 31;
*State v. Minton*, 116 Mo. 605; *Regina v. Rogers*, 8 C. &
P. 629.

"Evidence that no person of the character and address
represented on the instrument is to be found is *prima
facie* evidence of the non-existence of said person."
*People v. Eppinger*, 105 Cal. 36; *Rex v. Backler*, 5 C. &
P., 118.

Defendant need not have written the instrument; suffi-
cient if it was written by another through his procure-

ment or consent.—*Elmore v. State,* 92 Ala. 51. Under an indictment for forgery there can be a conviction for proof of uttering with guilty knowledge and fraudulent intent.—Code, § 4720; *Gardner v. State,* 96 Ala. 12; *People v. Kemp,* 76 Mich. 416; *Gassenheimer v. State,* 52 Ala. 318.

The Stamp Act is treated as a mere revenue law, and an unstamped check is not deemed a nullity, and the forgery of an instrument required to be stamped is indictable.—2 Bishop's New Cr. Law, § 540. An instrument which shows on its face that it was issued with the intent to circulate as money, though prohibited under heavy penalties, civil and criminal, is not void and may be the subject of forgery.—*Nelson v. State,* 82 Ala. 463.

Certainly the fact that defendant subsequently paid back the money obtained on the forged instrument could be no defense.—2 Bishop's New Cr. Law, § 598; *Jones v. State,* 118 Ala. 163. When the necessary consequences of any act is to defraud, the jury may infer the fraudulent intent.—*Curtis v. State,* 118 Ala. 125; *Benson v. State,* 26 So. Rep. 120.

TYSON, J.—The indictment is in the Code form setting out the check *in haec verba* alleged to have been forged. Under it, a conviction may be had, for forging the name of the drawer of this check, although he may have been a fictitious person.—*Thompson v. The State,* 46 Ala. 16; *The State v. Givens,* 5 Ala. 747; 2 Arch. Cr. Pr. & Pl. 1585; 2 McClain's Cr. Law, §§ 764, 792, 804.

That a forgery, as we have intimated, may be committed by the false making of a written instrument in the name of a fictitious person is too well settled to admit of controversy.—*Thompson v. The State, supra; The State v. Givens, supra;* 2 McClain's Cr. Law, § 764 and authorities cited in note 10; 2 Bishop's New Cr. Law, § 543; 13 Am. & Eng. Ency. Law (2d ed.) 1088 and note 2.

The testimony of La Prade, a witness introduced by the State, that he made inquiry of the person whom the defendant informed him drew the check and also of another person by the name of Johnson as its drawer, at

the instance of the defendant, and that he was unable to find any person named Johnson, whose initials were "J. D." was competent as tending to establish that the name of the drawer of the check had no existence—that the name affixed as drawer was that of a fictitious person.— 13 Am. & Eng. Encyc. Law (2d ed.) 1112 and note 10. "Where inquiries are to be made in regard to the residence of any supposed party to a forged instrument, it is proper and usual to call the police officers, pennypostmen, or other persons well acquainted with the place and its inhabitants; but if the inquiries have been made in the place by a stranger, his testimony, as to the fact and its results, is admissible to the jury, though it may not be satisfactory proof of the non-existence of the person in question."—3 Greenleaf on Ev. § 109. See also *People v. Sharpe,* 53 Mich. 523.

For the same reasons, it was entirely competent for the State to show by the paying teller of the bank upon which the check was drawn, that it was not paid and that the drawer had no account or funds with the bank. *People v. Eppinger,* 105 Cal. 36; *Rex v. Backler,* 5 Car. & P. 118; *Rex v. Brannan,* 6 Car. & P. 326; 3 Greenleaf on Ev. § 109.

In *People v. Eppinger, supra,* the court said: "The testimony of the teller in the bank on which the check was drawn that no firm by the name of Howell & Co. kept or had any account in his books, was *prima facie* evidence of the fictitious character of the check." This proposition is supported by the other authorities cited above in connection with this case.

Under the evidence it was a question for the jury to determine whether or not the name of the drawer was fictitious. If fictitious, the case is one in which the defendant being in possession of the check drawn by a person having no existence, sold it to LaPrade for value. If the drawer had no existence, of necessity the name must have been affixed by some one without authority— a forgery. The defendant having uttered it, as we have shown, and the check being payable to his order, the jury were authorized to infer an intent to defraud and that he, himself, forged it.—*Curtis v. The State,* 118 Ala.

125; *Allen v. The State,* 74 Ala. 557; *Stein v. The State,* 37 Ala. 123; 13 Am. & Eng. Encyc. Law (2d ed.) 1113.

It is said in *Hobbs v. The State,* 75 Ala. 6, that "One found in the possession of a forged instrument of which he purports to be the beneficiary, and applying it to his own uses, must, in the absence of explanation, be presumed to have fabricated it, or to have been privy to its fabrication. It is difficult to conceive that he could have the possession unless he had fabricated it, or assented to its fabrication; and the presumption grows stronger, when he uses or attempts to use it."

As to whether the explanation offered by the defendant as to his possession of the check, etc., was satisfactory, was for the jury.

The objection to the introduction in evidence of the check because not stamped as required under the act of Congress, is without merit.—2 Bishop's New Cr. Law, § 540, and note 5; *Nelson v. The State,* 82 Ala. 44.

So, too, it was entirely competent for the State to prove by the defendant that he negotiated another check to one Bray drawn by J. D. Johnson, and by witness La-Prade that he saw the defendant with another check signed by J. D. Johnson. He is shown to have had only one transaction with LaPrade, and he testifies to only one with Johnson, from whom he says he got the checks. 13 Am. & Eng. Encyc. Law (2d ed.) 1109 and 1110 and notes; 2 McClain's Cr. Law, § 808 and notes 2 and 3; *Sharpe v. The State,* 83 Ala. 48.

The fact that the defendant refunded to LaPrade the money obtained from him upon the sale of the forged check after the bank's refusal to honor it, is no defense. 2 Bish. New Cr. Law, § 598; *Jones v. The State,* 50 Ala. 163.

Under our statutes a general allegation of intent to defraud without naming any particular person or corporation is sufficient (§ 4908) ; and "if the intent induces the forging or utterance as genuine of a spurious instrument with the capacity to defraud any person, the offense is complete."—*Benson v. The State,* 124 Ala. 92.

It is clear under the principles we have announced, that the court committed no error in its rulings upon the trial of the cause.

Affirmed.