HARRIS, Judge.
Appellant was convicted of forgery in the second degree and sentenced to' ten years imprisonment in the penitentiary. Prior to arraignment appellant was found to be indigent and counsel was appointed to represent him at arraignment and on the trial. He pleaded not guilty. After sentence was imposed, appellant gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent appellant on this appeal.
Omitting the formal parts the indictment reads as follows:
“The Grand Jury of said County charge that, before the finding of this indictment, Kenneth W. Matthews, alias Kenneth W. Matthews, whose true Christian name is otherwise unknown to the Grand Jury, with the intent to injure or defraud, did falsely make, alter, forge, or counterfeit a certain instrument in writing which was in substance as follows:
“THE FIRST NATIONAL BANK OF MONTGOMERY
NO. 14
Montgomery, Ala. February 8 1975
“PAY TO THE order OF
Kenneth W. Matthews $ 144.96 One Hundred Forty Four dollars & 100 DOLLARS
*218 PLEASE WRITE ACCOUNT NUMBER HERE
17 9528 3
/s/ Brad C. Davis
Davis Survey &
Landscaping Co.
0622 0036
“AND ON THE REVERSE SIDE THEREOF:
/s/ Kenneth W. Matthews
or with the intent to injure or defraud did utter and publish as true the said falsely made, altered, forged, or counterfeited instrument in writing, knowing the same to be so falsely made, altered, forged or counterfeited,
against the peace and dignity of the State of Alabama.”
Mrs. Betty Littleton testified that on February 12, 1975, she was credit manager of Lorch’s Jewelry and Furniture Store located in Midway Plaza, Opelika, Lee County, Alabama. She stated that on that day around 7:00 p. m. appellant came in the store and said he wanted to purchase a birthstone ring and he looked at the rings in the jewelry department and did not find one that he wanted. He looked at a catalog and found one he wanted and since it had to be ordered, it was set up as a layaway and he put down a deposit on the ring. Appellant gave her a check signed in the name of Brad C. Davis, made payable to the order of appellant, Kenneth W. Mathews, and was drawn on the First National Bank of Montgomery, Montgomery, Alabama, in the amount of one hundred forty-four and ninety-six hundredths ($144.96) dollars. The check was dated February 8, 1975, and also' appearing on the check in the bottom left-hand corner in writing was the name Davis Survey and Landscaping Co. On the back of the check was appellant’s endorsement, his North Carolina driver’s license number, an Auburn, Alabama address and telephone number. Appellant told Mrs. Littleton his address and telephone number and she wrote this on the back of the check.
After seeing appellant’s driver’s license as an identification she accepted the check, took out $25.00 as a down payment on the ring and gave appellant the balance. Mrs. Littleton asked appellant if he had done work for this company and he told her he had worked for Davis Survey and Landscaping Company and she assumed it was a payroll check. She made an in-court identification of appellant as the person who gave her the check.
The check was deposited and it was later returned with a statement on the back that “We do not appear to have an account in the name of Brad C. Davis or Davis Survey and Landscaping Co.” Mrs. Littleton called the telephone number that was on the back of the check, given to her by appellant, and discovered that the telephone had been disconnected. She further learned that no such person by the name of appellant was living at the address listed on the back of the check which address was given by appellant to Mrs. Littleton. She then called Montgomery Information for a listing on Brad C. Davis and Davis Survey and Landscaping Co., and she was informed that they had no such listing. Mrs. Lit-tleton then called the Opelika Police Department.
On cross-examination Mrs. Littleton stated that appellant entered the store with a girl companion whom she described as having brown straight hair a little longer than shoulder length. That she was slim and appeared to be in her twenties. She further testified that the name Brad C. Davis and Davis Survey and Landscaping Co. were already written on the check when appellant presented it to her. That appellant wrote nothing on the check except his endorsement, “Kenneth W. Mathews.” She was positive that after deducting $25.00 from the check as a deposit on the ring, she gave the balance of the money to appellant personally and not to the girl who was with him.
*219 On redirect examination she stated that the girl with appellant was about five feet three inches tall and she saw no evidence that this young lady was pregnant. She further said that appellant never came back to pick up his ring.
On recross examination she was asked if the defendant ever offered to pay off this check and she said she never had any further contact with the defendant after he left the store.
Gary R. Knight, a detective with the Opelika Police Department, was assigned to investigate this case and located appellant in Atlanta, Georgia. He was arrested and returned to Opelika where he was interviewed by Knight after being given the Miranda rights and warnings. He signed a waiver of rights form and gave the detective a written statement. After the proper predicate was laid, this written statement was introduced and received into evidence. The statement was witnessed by Detectives Gary R. Knight and Fred Davis and is as follows:
“ T, Kenneth Watson Matthews, age 25, born September 2, 1949, at Dunn, North Carolina. I now reside at 1053 Laurel Ct., Conyers, Georgia. I went to the 10th grade in school and I can read and write. I have been advised of all of my rights by Detective Gary R. Knight and I understand them. I do voluntarily make the following statement to Gary R. Knight whom I know to be a police officer for the City of Opelika, Alabama. I have been advised of the charge of forgery against me.’
“The statement reads as follows: ‘About the first week in February, 1975, I was driving on 1-85 from North Carolina to Georgia when I was flagged down by a white male and two white females. The man was having trouble with a ’64 Ford Van so I stopped. The man stated his name was Fred and the girls’ names were Nancy — but I don’t know her last name —and the other girl was named Lisa Thompson. Brad asked me where he could get a paycheck cashed and told me he and his brother were in business together. I told him I could help him get one cashed in Statesville, North Carolina, where I have some kin. I took them in my car and Brad made the check out in my name because I had some drivers license and he didn’t. I cashed the check for him and gave Brad the money. Brad then had the van towed into a service station and we then left towards Mobile in my car. We stopped in a Motel #6 in Opelika and got two rooms. Brad said he needed some more money and Lisa and me to take another check and cash it for him. I told him that they wouldn’t cash a check for me, being out of town and Brad told me to tell them a local address. Lisa and me got into the car and drove in Opelika until she told me to stop at a Lorch’s Store. Linda and me went inside and I looked at some men’s rings and watches. I ordered a ring and then gave the man at Lorch’s the check and the down payment for the ring was taken out and Lisa picked the change from the counter. I told the people at the store I worked at a Davis Survey and Landscaping Company and this was a payroll check. I signed the check back and gave my drivers license as identification. The number was written on the back of the check. I looked at Lisa and Lisa told me what phone number to give and what address to give in Auburn. I had never lived in Auburn at any time and did not know if this was a good address or not. Brad had told me to get something for myself and Lisa more or less picked this ring out for me. I haven’t even got any idea how to get back to the store where the ring was bought. I had only been in town about three or five hours when all this happened and I haven’t picked up the ring since I bought it. The money was kept by Lisa and I didn’t get anything from the check at all. I went back to the hotel *220 room where Brad and Nancy were. Lisa, Brad and Nancy were all smoking marijuana. I had been drinking but I didn’t want anything to do with the marijuana. I told them I was going to the Waffle House and I got in my car and left. I have never seen Brad, Lisa or Nancy before I picked them up or since I left them. Lisa had told me her father worked in a post office in Mobile but I don’t know if this is true or not. I do know that Brad was called “Billy Jack” because he wore a black hat all the time. Brad and Nancy were supposed to have run away together according to Lisa and Brad was supposed to have just gotten out of the Marines but as far as I know he could have been AWOL. The above statement is true and correct to the best of my knowledge. Signed, Kenneth Watson Matthews.’ ”
Detective Knight further testified that he made an investigation with reference to some of the statements contained in the above quoted statement signed by appellant. He stated that he checked with Motel No. 6 in Opelika and there was no record of a Kenneth Matthews or a Brad Davis ever registering at this motel. Through his investigation he never found that a Davis Survey and Landscaping Company had a place of business in Montgomery, nor was he ever able to locate a person by the name of Brad Davis at any address in Montgomery. He stated that there was not an account in the name of Brad Davis with the First National Bank of Montgomery. He said appellant was not too sure whether the girl’s name was Lisa or Theresa Thompson. He located Theresa Thompson in Mobile, Alabama, and verified that her father was employed with the Post Office in Mobile.
On cross-examination he testified that appellant gave him a description of the girl as being approximately 19 or 20 years old and was five feet two, had long brown hair, shoulder length or longer, and weighed about 105 pounds. He stated that appellant was not too specific as to the description of Brad Davis but did say that he had short hair and wore a brown or black “Billy Jack” type hat.
He further stated that he checked with the First National Bank of Montgomery to see if the bank had any account in the name of Brad Davis and was informed there was no such account. He checked the telephone directory and there was no listing for a Brad C. Davis and he called “information” at the telephone company and got the same answer.
Theresa Thompson testified that she lived with her parents in Mobile, Alabama, that she was 18 years of age and that her father was employed at the Post Office in that city. She further stated that she was living with her parents in Mobile on February 12, 1975; that she was not in Opeli-ka on that date and had never been to Opelika in her life.
She testified that she knew the defendant and pointed him out in the courtroom. She said she met him in Atlanta, Georgia, two years previously but she did not know him as Kenneth Matthews. She stated that appellant told her his name was Kenneth Watson. She admitted spending some time with him in Atlanta over a period of three or four days. She was asked by the Court how long she had seen him at any one time and she replied that she was with him about 18 hours the first day. She stated that after these three or four days she never saw appellant again until she appeared and testified in this case. She further stated that she had never been in Lorch’s Jewelry and Department Store in Opelika in her entire life, and that on February 12, 1975, she was in the home of her parents in Mobile and was six months pregnant at that time.
It is crystal clear that the testimony of Theresa Thompson completely contradicts and repudiates that portion of appellant’s statement implicating her in his forgery scheme in saying that she went with him *221 to Lorch’s, that she supplied the false telephone number and the street address that was placed on the back of the check, and that she kept the balance of the money after the $25.00 deposit was made on the ring from the check he gave Mrs. Little-ton.
In Ex parte State, 213 Ala. 1, 104 So. 40, the Supreme Court held:
“A consideration of the cases will disclose as elements of forgery (1) that there must be a false making — and this may be accomplished by 'the fraudulent application of a false signature to a true instrument, or a real signature to a false’ instrument; (2) that the essence of forgery is an intent to injure or defraud when the act complained of is done (Agee v. State, 113 Ala. 52, 21 So. 207; Denson v. State, 122 Ala. 100, 26 So. 119), and it is not necessary that any actual injury should result from the offense (Denson v. State, supra); and (3) it is of ‘no consequence whether the counterfeited instrument be such as if real would be effectual to the purpose it intends so long as there is a sufficient resemblance to impose on those to whom it is uttered.’ Burden v. State, 120 Ala. 388, 25 So. 190, 74 Am.St.Rep. 37, L.R.A. 1918B, p. 1192, note; 7 Ency.Dig.Ala. Rep. 477.
“This court has held that it is not necessary for a conviction of forgery for the state to show that defendant himself wrote the forged order, since if, with intent to utter it, he procured another to write it, and afterwards uttered it as genuine, he would be as culpable as though he himself had written it. Koch v. State, 115 Ala. 99, 22 So. 471; Elmore v. State, 92 Ala. 51, 9 So. 600; Gooden v. State, 55 Ala. 178; State v. Chance, 82 Kan. 388, 108 P. 789, 27 L.R.A. (N.S.) 1004, 20 Ann.Cas. 164.”
In Williams v. State, 126 Ala. 50, 28 So. 632, it is established that where a defendant was charged with having forged a check which was made payable to his order, and there was evidence that the name of the drawer was that of a fictitious person, the jury was authorized to infer an intent on the part of the defendant to defraud the party to whom he transferred the check, and that he had forged it.
It is said in Hobbs v. State, 75 Ala. 1, that “one found in possession of a forged instrument of which he purports to be the beneficiary, and applying it to his own uses, must, in the absence of explanation, be presumed to have fabricated it, or to have been privy to its fabrication. It is difficult to conceive that he could have the possession unless he had fabricated it, or assented to its fabrication; and the presumption grows stronger when he uses or attempts to use it.”
Whether the explanation offered by the defendant as to his possession of the check was satisfactory presented a jury question.
In Tidwell v. State, 33 Ala.App. 198, 31 So.2d 513, this Court said:
“Thus, purely a question of fact was presented, which the jury resolved adversely to the appellant. This being so, the established principle that one possessing a forged instrument, and applying it to his own use may, in the absence of a satisfactory explanation, be presumed to have fabricated it, or have been privy to its fabrication, fully supports the verdict rendered under the facts presented in this case by the State. Curtis v. State, 118 Ala. 125, 24 So. 111; McGee v. State, 20 Ala.App. 221, 101 So. 321; Overby v. State, 24 Ala.App. 254, 133 So. 915.”
To the same effect is the holding of this Court in Terrell v. State, 34 Ala.App. 262, 38 So.2d 604.
We have carefully searched the record for errors injuriously affecting the sub *222 stantial right of appellant and have found none. Accordingly, the judgment of conviction is affirmed.
AFFIRMED.
TYSON, DeCARLO and BOOKOUT, JJ., concur.